AO 91 (Rev. 02/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

FEB - 6 2012

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| JOHN MILLS | ) | Case No. 8:12-MJ- 70 (ATB) |
| | ) | |
| Defendant | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of  01/26/2012 - 01/27/2012  in the county of  Franklin  in the  Northern  District of  New York , the defendant violated  Title 18  U. S. C. §  1001 , an offense described as follows:

Providing materially false statements in a matter within the jurisdiction of the Environmental Protection Agency; failure to notify the National Response Center of the release of a hazardous substance into the environment in a reportable quantity, in violation of Title 42, United States Code, Section 9603; and use of untrained workers to remove asbestos in violation of the Toxic Substance Control Act, Title 15, United States Code, Section 2615(b); and aiding and abetting such acts, in violation of Title 18, United States Code, Section 2.

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

Robert Conway, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 02/06/2012

_____
Judge's signature

City and state:  Syracuse, NY    Hon. Andrew T. Baxter, U.S. Magistrate Judge
*Printed name and title*

AFFIDAVIT OF ROBERT CONWAY

1. I am a Special Agent with the United States Environmental Protection Agency's Criminal Investigation Division (EPA-CID) and have been so since August 2009. I am presently assigned to the Northern and Western Districts of New York. In addition, I have worked as a federal law enforcement officer for the National Park Service within the Department of Interior for approximately twelve years. I have investigated and participated in successful prosecutions of individuals who have violated criminal laws of the United States.

2. My responsibilities include investigating criminal violations of the environmental statutes administered by the EPA, including the Clean Air Act (CAA), Title 42, § 7401 *et seq.*; the Comprehensive Environmental Response, Compensation and Liability Act, (CERCLA or "Superfund"), 42 U.S.C. § 9601 *et seq*; and the Toxic Substances Control Act (TSCA), 15 U.S.C. § 2601 et seq. I am also empowered to investigate violations of Title 18 offenses, including 18 U.S.C. § 1001 governing false statements made in matters within the jurisdiction of executive agencies of the United States.

3. I , along with Resident Agent in Charge (RAC) Justus Derx, EPA-CID, and Special Agent Renee Stewart, EPA-CID, have been conducting an investigation into, among other allegations, that property owner John Mills, and his supervisory employee, Terrance Allen, directed untrained and unlicensed employees to illegally remove asbestos containing materials from the basements of the following locations, contrary to federal Clean Air Act regulations: 144 Elm Street, Malone, NY; 458 East Main Street, Malone, NY; and 213 West Main Street, Malone, NY. The Clean Air Act provides at 42 USC §

7413(c) that it is a criminal offense to violate any work practice standards set by the EPA pursuant to 42 USC § 7412(h). We are further looking into CERCLA violations. CERCLA makes it a crime for any person in charge of a facility from which a release of a hazardous substance occurs in a reportable quantity to fail to immediately notify the appropriate federal agency as soon as he or she has knowledge of the release. 42 U.S.C. § 9603 (b)(3). The reportable quantity for asbestos is one pound. 40 C.F.R. § 302.4(table). We are looking into violations of TSCA and regulations promulgated thereunder, which makes it a crime for individuals to remove asbestos from public or commercial facilities without having received training in the safe and legal methods of removal. 15 U.S.C. § 2615(b); 40 C.F.R. § Part 763 Subpart E, Appendix C. Title 18 U.S.C. § 2 makes it a crime to aid, abet counsel, or command another to commit an offense against the United States. Finally, we are investigating alleged violations of Title 18 U.S.C. § 1001 which makes it a crime to knowingly and willfully make a false material statement in any matter within the jurisdiction of an executive agency of the United States. This includes false material statements to Special Agents of the Environmental Protection Agency.

4. On Thursday January 26, 2012, EPA-CID RAC Justus Derx received a telephone call from Ryan Avery concerning illegal asbestos removal at 144 Elm Street, Malone, NY and 458 Main Street, Malone, NY (St. Joseph's Rehabilitation Center). Mr. Avery advised that he was employed by John Mills, owner of these properties, and was directed by Mills to remove asbestos containing pipewrap and elbows from the basement areas of these buildings. Mr. Mills told Mr. Avery that following the removal to take the bags of asbestos waste material to a garage located behind the Biondo Building complex (also owned by Mills) at 213 West Main Street in Malone, NY. Mr. Avery was further

instructed by John Mills not to tell the employees at the St. Joseph's Rehabilitation Center that he was removing asbestos containing materials from the building. Mr. Avery estimates that he removed approximately seven bags of asbestos waste from the St. Joseph's Rehabilitation Center. Mr. Avery stated that he placed these seven bags of waste in the garage area approximately 10 days ago. Mr. Avery stated that during the last week or so he removed approximately 17 additional bags full of asbestos containing materials from the basement of this building, 144 Elm Street, and that he transported the bags to the McClain Garage (again, owned by Mr. Mills) located at 213 W. Main Street on the morning of January 26, 2012. Mr. Avery said approximately 22 bags of asbestos containing materials had been placed behind the Biondo Building complex at 213 West Main Street in Malone, NY. Mr. Avery further stated that significant amounts of asbestos containing debris were still remaining in both basement areas at 144 Elm Street, Malone, NY and 458 Main Street, Malone, NY. Mr. Avery stated that Mr. Mills told him not to worry about health risks related to removing the asbestos because all he needed to do was wear a mask to protect himself. Mr. Avery was provided a mask, but he is not sure if it was good for asbestos removal. Mr. Avery stated he has never been trained or licensed to remove asbestos. Mr. Avery did not use any water to wet the asbestos during the removal and that no containment was built or other proper procedures followed. Mr. Avery said that he had been working for Mr. Mills on and off for approximately four years.

5. On the same date, January 26, 2012, EPA-CID RAC Derx and SA Conway traveled to the Biondo Building complex located at 213 West Main Street in Malone, NY. They observed a U-Haul box truck located in the parking lot of 213 West Main Street, which Mills advised he owned. The U-Haul truck had a new lock on the box door and several

pieces of suspect asbestos containing material lying on the back rear bumper of the truck. Mr. Avery advised that he had never known this truck to be locked until this day. Based on RAC Derx's training and experience he believed that material on the rear bumper is friable asbestos containing material. Subsequent laboratory analysis taken following receipt of a judicially authorized search warrant confirmed this belief.

6. On the same date, January 26, 2012, property owner John Mills called RAC Derx and met the agents at 213 West Main Street, Malone, NY. Mr. Mills denied having directed any of his employees to disturb or remove asbestos nor having any knowledge of bags of waste stored in the garage located at 213 West Main Street. Mr. Mills further stated that if bags of waste did in fact exist that he had no idea what was inside of them. Mr. Mills added that asbestos material was found in two of his buildings downtown and that a New York State Department of Environmental Conservation employee tested the material. Mr. Mills advised he spoke with the same individual today and was provided confirmation that the sampled material contained asbestos. Mr. Mills stated he had talked to two asbestos abatement companies about cleaning up the materials but neither company had come to Malone yet. The interview ended with Mr. Mills stating he did not have a key for the lock on the box truck and he would not provide consent to search the box truck. However, Mr. Mills acknowledged that he is the owner of both the garage and the U-Haul box truck.

7. On January 26, 2012, RAC Derx and SA Stewart interviewed Louis Carrock, an Inspector with the NYS Department of Labor (DOL) Asbestos Control Bureau (ACB). Inspector Carrock stated that two weeks ago he inspected two buildings, 458 East Main Street, Malone, NY and 144 Elm Street, Malone, NY, (the buildings identified above) and that

he noticed the buildings contained a large quantity of friable asbestos pipe wrap and that some of the material had been recently disturbed. Inspector Carrock took several samples of material that tested positive for asbestos. Based on this information, Inspector Carrock issued a notice of violation to Mr. Mills for using un-licensed workers to remove asbestos. Mr. Carrock stated he advised Mr. Mills that he needed to retain a licensed asbestos abatement company to remove any of the asbestos from his properties.

8. On January 26, 2012, RAC Derx spoke with Terry Allen via telephone with SA Conway listening on speaker phone. RAC Derx had learned during his investigation that Mr. Allen is a supervisory employee in the employ of Mr. Mills. He oversaw, among others, Mr. Avery. RAC Derx asked Mr. Allen if he had any knowledge of approximately 18 bags of waste having been located at the garage at 213 West Main Street, Malone, NY and to where those bags were removed. Mr. Allen denied having any knowledge of any waste bags being inside the garage bay nor any role in moving them. Mr. Allen further denied knowing anything about asbestos abatement work activities being conducted at 458 East Main Street and 144 Elm Street within Malone, NY. Mr. Allen refused to answer any additional questions concerning the buildings in question or the 18 bags of waste. Mr. Allen ended the phone conversation by stating you can arrest me before I will offer any additional information or help. Mr. Allen called RAC Derx back about an hour later and said that he would not speak about the situation any more and that he had retained an attorney named Brian Stewart.

9. On January 27, 2012, SA Stewart telephonically spoke with Inspector Carrock. Inspector Carrock stated that he received multiple phone calls from an anonymous employee of John Mills. RAC Derx subsequently learned that the employee was Ryan Avery, when

Mr. Avery called RAC Derx and admitted his calls to Inspector Carrock. The anonymous caller (Avery) to Inspector Carrock stated that for the past two weeks a crew of six employees of John Mills had been "ripping out" asbestos from 458 East Main Street, Malone, NY, 144 Elm Street, Malone, NY and 100 Elm Street, Malone, NY. During a second phone call to Inspector Carrock, someone called but hung up when Inspector Carrock answered. During a third phone call to Inspector Carrock the anonymous caller (Avery) identified himself as a John Mills employee. The caller advised he was just fired by John Mills for calling the NYS DOL ACB. The employee stated that John Mills had learned someone had called the DOL ACB and John Mills came to see the employee, picked up his (Avery's) cell phone, and dialed back the last number. The employee said once Inspector Carrock answered the phone John Mills hung up and the employee (Avery) was immediately fired.

10. Inspector Carrock advised that he had called John Mills on January 26, 2012, regarding the complaint received (and in that manner, John Mills had learned that someone had complained about the ongoing asbestos removal.). When asked about asbestos removal work going on in the basements of 458 East Main Street, Malone, NY, 144 Elm Street, Malone, NY and 100 Elm Street, Malone, NY, Inspector Carrock said John Mills told him, "I don't know what you are talking about." John Mills told Inspector Carrock that there should be no one working on asbestos removal in his basements.

11. On January 26, 2012, a review of Lexis Nexis records by SA Stewart indicated that the following properties were owned by Mr. Mills or Helm, Inc. (A company owned by John Mills):

    (a)    458 East Main Street, Malone, NY

      (b)      144 Elm Street, Malone, NY.

Additionally, on January 26, 2012 John Mills told RAC Derx that he owned the property and U-Haul located at 213 W. Main Street, Malone, NY. On January 27, 2012, a judicially authorized federal search warrant was executed at 213 West Main Street, Malone, NY, in the U-Haul box truck and garage bay and at the basements of 144 Elm Street, Malone, NY and at 458 East Main Street, Malone, NY. A search of the box truck found 18 unsealed bags stuffed full of what appeared to be asbestos pipe wrap insulation. The suspect asbestos containing pipe wrap was completely dry and open to the environment. Samples of suspect material from each bag were taken in addition to two samples of the suspect asbestos containing material (SACM) lying on the bumper of the box truck. Linear measurements of the pieces in the bag were taken in addition to photographs of the waste in each bag. A cumulative total of 263 linear feet of pipe insulation was contained in the 18 unsealed bags. A search of the garage bay where Mr. Avery stated the bags were initially stored revealed what appeared to be asbestos debris scattered on the garage bay floor. A sample of this SACM was taken and the location was documented. The St. Joseph's Rehabilitation Center located at 458 East Main Street, Malone, NY also contained substantial amounts of what Special Agents suspected was asbestos debris lying on the floor, oil tanks, furniture, and cabinets. A total of four samples were collected at 458 E. Main Street. Numerous photographs of conditions and the piping layout were taken. The building at 144 Elm Street contained SACM debris throughout the basement. A total of eight samples, all from the basement area, were taken from this building.

12. On January 27, 2012 while executing the search warrant at 213 West Main Street, Malone, NY, New York State Department of Environmental Conservation (NYS-DEC) Investigator Ken Bruno was contacted by Cynthia E. King, a worker in the Biondo Building complex. Ms. King advised she observed a black pickup truck back up to the U-Haul box truck between 2:30 and 3:00 p.m. the previous day, January 26, 2012. Ms. King advised that she saw Terry Allen (the supervisory employee of John Mills, owner of the building in which Ms. King works), exit the pickup truck and place about 20-25 black garbage bags with round tube like material inside them.

13. On January 27, 2012, Mr. Avery spoke with Jeff Holcomb, a friend who also socializes with Terry Allen. Mr. Holcomb and Mr. Allen spoke via telephone, with Mr. Avery listening via speaker phone. Mr. Allen stated that Mr. Avery was a rat for contacting the Department of Labor. Mr. Holcomb then asked Mr. Allen if he got rid of the asbestos. Mr. Allen said nothing at first and then stated he could not get rid of the asbestos in the box truck due to law enforcement presence at the scene all night. Special Agents spoke with Mr. Allen the previous day and Mr. Allen denied having any knowledge of, or part in, any asbestos removal from properties owned by John Mills.

14. On January 27, 2012, RAC Derx spoke with Linda Boss, clinic supervisor of the St. Joseph's Rehabilitation Clinic located at 458 East Main Street, Malone, NY concerning the basement. SA Derx advised Mrs. Boss that the basement appeared to be contaminated with asbestos containing material and that it would not be safe for the employees to access the basement area. Mrs. Boss stated that during the past two weeks

the owner of the building, John Mills, has been having work done in the basement area. Mrs. Boss recalled that Mr. Mills has visited the building several times over the past two weeks and had gone into the basement area. Mrs. Boss also recalled that Mr. Mills' head of maintenance, Terry Allen, has also been at the building on several occasions over the past two weeks and that he was also in the basement. Mrs. Boss advised that she believes Mr. Allen may have been in the basement area earlier in the day. Mrs. Boss further stated that Ryan Avery, an employee for Mr. Mills, had spent a considerable amount of time working in the basement area during the past two months.

15. On February 1, 2012, Inspector Carrock received the testing results of the 34 samples taken during execution of the search warrant. All the samples except one came back positive for the presence of asbestos containing materials greater than 1% (the level at which asbestos is regulated under the Clean Air Act). The only sample that did not come back positive was a piece of floor tile that was taken in the garage bay. The two samples found on the bumper of the box truck contained asbestos percentages of 13.33% and 11.11% respectively. The sample on the garage bay floor contained 9.52% asbestos. Samples in the box truck were all positive with asbestos percentages from between 18.18% to 44.44%. Samples at 458 East Main Street were all positive with asbestos percentages ranging from 8.33% to 44.44%. The 144 Elm Street samples were all positive as well and varied and ranged from 2.3% to 15.52% asbestos. The weight of all eighteen bags totaled 289 pounds (a average of 27.16 lbs/bag).

16. On February 5, 2012, your affiant checked the National Response Center database to

determine whether any notification had been made of any release of a hazardous substance in a reportable quantity into the environment related to any of the above described properties. Your affiant determined that no person, including John Mills and Terrance Allen, had submitted a notification of the release of asbestos from any of the above facilities mentioned in this affidavit during the period December 1, 2011 through February 5, 2012.

17. Accordingly, your affiant submits that probable cause exists to arrest John Mills and Terrance Allen for making materially false statements in a matter within the jurisdiction of the EPA as outlined above; for violating CERCLA relating to the failure to report the release of a hazardous substance of a reportable quantity into the environment as soon as they had knowledge; and TSCA and aiding and abetting TSCA violations relating to the use of workers untrained in the safe and proper methods required to remove asbestos related to the above-described properties.

Further affiant sayeth not.

*Robert Conway*
Robert Conway
EPA Special Agent

Sworn before me on February 6, 2012

*Andrew T. Baxter*
Hon. Andrew T. Baxter
U.S. Magistrate Judge













